UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBINSON L. LANGILLE, et al., | Case No. 2:19-cv-00454-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| BERTHEL, FISHER & COMPANY FINANCIAL SERVICES, INC., | |
| Defendant. | |

Plaintiffs allege defendant's former employee, a financial advisor, steered plaintiffs into high risk, high cost investments ill-suited for their financial needs and goals. Defendant moves to dismiss, or, in the alternative, for summary judgment. As explained below, the court finds summary judgment is not warranted at this juncture but GRANTS the motion to dismiss.

I. <u>BACKGROUND</u>

Plaintiffs Robinson Langille and Linda Langille, a married couple, both retired, bring this suit against defendant Berthel, Fisher & Company Financial Services, Inc., an Iowa corporation doing business in California as an independent broker-dealer, subject to all Financial Regulatory Authority ("FINRA") rules as a FINRA-registered broker-dealer. First Am. Compl. ("FAC"), ECF No. 15, ¶¶ 2−5. Shawn B. Davis acted as Berthel's agent and FINRA-registered representative in providing investment advice and recommendations to plaintiffs. *Id.* ¶ 6.

Plaintiffs allege they "entrusted Mr. Davis with virtually all of the money that they had worked for and saved for over their entire lives," that "Davis was very familiar with [their] []

circumstances, and their general desire to protect their savings along with some growth and income. . . . and [aware] that [they] [] would be relying entirely on him to make appropriate investment decisions for the accounts." *Id.* ¶¶ 8–9. Nonetheless, according to plaintiffs, Davis recommended plaintiffs invest in "two high-risk illiquid [direct participation programs ("DPPs")]." *Id.* ¶ 10. In November 2006, on Davis's recommendation, plaintiffs invested in two DPPs, investing $278,000 in United Development Funding III ("UDF") and $275,000 in Atel Growth Capital Fund ("Atel"). *Id.*

Plaintiffs allege Davis recommended the UDF and Atel investments "solely because these securities were massive commission-generating products" that "resulted in the Langilles paying exorbitant commissions and fees," even though neither investment was suitable given plaintiffs' needs and goals. *Id.* ¶¶ 11, 19−20. Davis allegedly misrepresented the investments as "a secure way to invest [plaintiffs'] retirement money" and represented that the investments would provide "a full return of [plaintiffs'] principal investment along with income," without properly disclosing the risks or characteristics of the investments or the "extremely large commissions he and his brokerage firm generated as a result of these transactions." *Id.* ¶¶ 13−17. According to plaintiffs, "[t]he major wirehouses . . . prohibit their brokers from selling these types of products to their customers . . . . because the products are so blatantly against the customers' interest." *Id.* ¶ 12. Plaintiffs contend they relied on Davis's misrepresentations and omissions to their detriment. *Id.* ¶ 18. Davis was no longer employed by Berthel as of August 20, 2012 but "continued to serve as the Langilles' broker from the purchase of these DPPs through May 2017, when he ceased being a registered broker with FINRA." *Id.* ¶ 25.

Because UDF and Atel are private, non-traded products, plaintiffs contend they were unable to determine the true value of their investments for several years. *Id.* ¶ 21. Plaintiffs' initial UDF investment was initially priced at $20 per share and continued at that valuation until at least June 30, 2016, according to quarterly statements plaintiffs received. *Id.* ¶¶ 21, 23. The Federal Bureau of Investigation raided UDF in late 2015 "due to potential fraud and insider activity[,]" but plaintiffs' statements continued to indicate a $20 per share price for UDF. *Id.* ¶¶ 22−23. As of late 2016 or early 2017, however, both plaintiffs and the public learned "the true value of UDF," which

"is essentially worthless." *Id.* ¶ 23. Similarly, plaintiffs were informed every quarter following their investment until June 2018 that their Atel investment was valued at $275,000, the amount of their initial investment. *Id.* ¶ 24. In June 2018, Atel informed plaintiffs and other investors that Atel would make its final distribution and plaintiffs "would receive nothing additional from their investment." *Id.* Plaintiffs thus contend they discovered Berthel and Davis's misconduct only in fall 2016 "when the true valuation of the UDF product (essentially worthless) became clearer." *Id.* ¶¶ 27, 29−33 (alleging Berthel violated FINRA rules requiring it to supervise brokers, periodically review transactions and take steps to ensure customers not led to unsuitable and fraudulent investments).

Plaintiffs sued Berthel in state court on February 15, 2019, and Berthel removed the case to this court on March 11, 2019. ECF Nos. 1, 1-1 (notice of removal and complaint). Berthel moved to dismiss plaintiffs' complaint but withdrew that motion upon agreeing to allow plaintiffs to file a first amended complaint. ECF Nos. 4−7, 9, 12. Plaintiffs then filed their first amended complaint, alleging: (1) breach of fiduciary duty; (2) fraud in the inducement; (3) negligence; and (4) negligent supervision. *See generally* FAC. Berthel filed a motion titled "motion to dismiss" but clarified it moves under "Rules 9(b), 12(b)(6), and 56," providing a statement of undisputed facts and evidence beyond the complaint, typically reserved to motions for summary judgment; Berthel argues "[w]hichever course the Court chooses, each of Plaintiffs' claims fails as a matter of law." Mot., ECF No. 16, at 2[1]; Statement of Undisputed Facts ("SUF"), ECF No. 17, at 2 (providing undisputed facts "in support of [Berthel's] motion to dismiss/motion for summary judgment"). Plaintiffs have opposed without directly acknowledging or responding to Berthel's statement of undisputed facts or supporting exhibits, though they respond to the substance of Berthel's summary judgment arguments based on those facts and exhibits. Opp'n, ECF No. 22. Berthel filed a reply. Reply, ECF No. 23. As explained further below, the court allowed the parties to file supplemental briefing as to the propriety of summary judgment on this record and then submitted the motion, which it resolves here.

---

[1] All citations to the parties' briefs refer to CM/ECF page numbers, not the briefs' internal pagination.

3

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United*

*States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

  B. <u>Rule 9(b): Fraud Allegations</u>

    "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted). Ultimately, a plaintiff's fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

  C. <u>Rule 56(d)</u>

    Federal Rule of Civil Procedure 56(d) states: "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). If summary judgment is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[(d)] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citing, inter alia, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (noting "the Supreme Court has restated [Rule 56(d)] as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'")).

    A district court should defer ruling on a motion for summary judgment when the party opposing summary judgment "makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information actually

exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). However, a Rule 56(d) motion may be denied when the party seeking deferral has not diligently sought discovery or additional discovery would be futile or irrelevant to the dispute. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

III. DISCUSSION

Berthel principally argues that documents provided to and executed by plaintiffs at the time of their investments conclusively establish that plaintiffs' claims are time-barred, warranting entry of summary judgment in Berthel's favor. Mot. at 12−18. In the alternative, Berthel argues plaintiffs have not satisfied Rule 9(b)'s heightened pleading standard in alleging fraud and, at the least, have not sufficiently alleged tolling of the statute of limitations, warranting dismissal of plaintiffs' claims. *Id.* at 18−20. As explained below, the former argument cannot prevail on this record. Finding some merit in the latter argument, however, the court construes Berthel's motion as a motion to dismiss and grants that motion.

A. Rule 56(d)

In response to Berthel's motion, and with leave from the court, plaintiffs' counsel filed a declaration stating plaintiffs "need to take discovery to provide the Court with evidence (1) rebutting Defendant's alleged undisputed facts and (2) to provide the Court with evidence regarding Defendant's broker's various breaches of the fiduciary duty that are separate and apart from his misrepresentations and omissions regarding the nature of the two private alternative investments." Sommers Decl., ECF No. 29, ¶ 5; *see also* ECF No. 27 (order permitting plaintiffs to file Rule 56(d) affidavit and permitting Berthel to file response); Def. Resp., ECF No. 30.

More specifically, the Langilles raise a dispute regarding whether, in June 2006, they completed a Berthel "Account Suitability Form" in which they identified their annual income as between $100,000 and $199,999, with net liquid assets and net worth both between $1,000,000 and $4,999,999, and whether they attested to 25 years of investment experience with stocks, bonds and mutual funds, 3 years with annuities, and zero years with options and "LTD Partnerships." Sommers Decl. ¶ 7 ("Plaintiffs will testify that they did not complete these forms, and that the forms contain inaccurate information regarding the Langilles' financial condition and their experience.");

*see* UMF 18−20; Murphy Decl., ECF No. 6, Ex. 1. They similarly dispute the authenticity of Mr. Langille's initials on an "investor questionnaire." Sommers Decl. ¶ 7. Plaintiffs' counsel represents, subject to Rule 11,[2] that "[p]laintiffs will testify that they did not complete these forms, and that the forms contain inaccurate information regarding the Langilles' financial condition and their experience." Sommers Decl. ¶¶ 6, 7, 9. Further, citing an unidentified "California regulation" that purportedly requires an investor to have a minimum liquid net worth of at least ten times an investment, plaintiffs argue, "[d]iscovery is needed to determine if Defendant breached this California regulation regarding concentration suitability because Plaintiffs' liquid net worth at the time was nowhere near this level." *Id.* ¶ 14. In response to Berthel's claims it required customers to complete "a subscription agreement and similar forms or questionnaires created by the investment sponsor" and a "Prospectus/Private Placement Memorandum Acknowledgement/ Representations" to purchase a non-traded security, Murphy Decl., ECF No. 6, ¶ 5, "Plaintiffs will testify that they never actually received the prospectuses" and contend they require discovery to determine whether "withholding [prospectuses] would have further prevented Plaintiffs from

---

[2] Under Rule 11:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). An attorney who violates Rule 11 may be subject to sanctions. Fed. R. Civ. P. 11(c).

understanding the true nature and cost (commissions) of these alternative investments." Sommers Decl. ¶ 11 (emphasis omitted).

Plaintiffs also raise a point they referred to obliquely in their opposition and relied on heavily at hearing: "Defendants' core contention – that discovery is not needed regarding misrepresentations because it contends that mere receipt of a prospectus automatically always imputes knowledge to the investor regardless of contradictory oral representations – is simply incorrect." *Id.* ¶ 12 (citing *Luksch v. Latham*, 675 F. Supp. 1198, 1204−05 (N.D. Cal. 1987) (finding "mere receipt of a prospectus containing information that contradicts material representations made orally to investors, standing alone, does not put such investors on constructive notice of [federal claims under] section 10(b) and rule 10b–5 [] as a matter of law" and finding "it highly unlikely that the California Supreme Court would adopt this far-reaching concept of constructive notice" in addressing similar state law claims); *Casella v. Webb*, 883 F.2d 805, 809 (9th Cir. 1989) (finding "[c]onstructive knowledge cannot bar a purchaser's recovery under section 12(2) [of the 1933 Securities Act]" because "actual knowledge of the untruth or omission" is required)).

Berthel responds that plaintiffs' requested discovery and anticipated testimony will not materially affect the current record on summary judgment. Def. Resp. at 2−4. That record, according to Berthel, conclusively establishes that "[t]he Langilles were [] on notice of their claims" upon acknowledging receipt of certain disclosures, regardless of whether the Langilles actually received those disclosures, rendering their claims time-barred as a matter of law. *Id.* at 3−4. Berthel further argues that California courts have held, "contrary to the court's prediction in *Luksch*, receipt of a prospectus is sufficient to trigger the statute of limitation under California law," and notes that *Casella* addressed a claim under section 12(2), which plaintiffs do not assert here. *Id.* at 5 (emphasis omitted). Finally, Berthel argues, "[a]fter Davis's departure [from Berthel in August 2012], the Langilles did not have any relationship with Berthel Fisher, and any basis for equitable tolling ended." *Id.* at 6 (citations omitted).

On this record and at this juncture, summary judgment is not warranted. As plaintiffs note, courts have not granted summary judgment on limitations grounds where a plaintiff

purportedly received disclosures, but triable issues of fact remained as to whether the defendant breached his or her fiduciary duties in recommending investments allegedly unsuitable for the plaintiff's needs. *See* Sommers Decl. ¶ 13 (citing state trial court order denying summary judgment on these grounds); ECF No. 29-6 (order); Opp'n at 9−10; *see also Sakai v. Merrill Lynch Life Ins. Co.*, No. C 06-2581 MMC, 2008 WL 687243, at *2 (N.D. Cal. Mar. 7, 2008) (vacating order granting motion for summary judgment on statute of limitations defense upon finding defendant had not "demonstrated [plaintiff] knew, or was on notice, . . . that the Annuity was an 'unsuitable' investment"); *cf.* Judicial Council of California, Civil Jury Instruction 4105 ("Duties of Stockbroker—Speculative Securities") (stockbroker must ensure "client understands the investment risks in light of his or her financial situation"; "inform the client that speculative investments are not suitable if the stockbroker believes that the client is unable to bear the financial risks involved"; and "[n]ot [] solicit the client's purchase of speculative securities that the stockbroker considers to be beyond the client's risk threshold"). Moreover, while Berthel relies heavily on a California Court of Appeal's decision finding "[r]eceipt of investment disclosures can trigger the statute of limitations in appropriate cases," thus preventing a plaintiff from successfully invoking the discovery rule, the court is not satisfied so early in these proceedings that this is an "appropriate case[]" for applying such a rule. *See WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156–58 n.6 (2015).[3] Finally, while Berthel argues that plaintiffs' "basis for equitable tolling ended" when Davis's employment with Berthel concluded, none of the authorities Berthel cites clearly applies here or clearly supports Berthel's argument. *See* Def. Resp. at 6 (citing *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 102 (1976) (finding statute of limitations for medical malpractice claim "began to run no later than the date of plaintiff's discharge from defendants' care"); *Mark K. v. Roman Catholic Archbishop*, 67 Cal. App. 4th 603, 611 (1998), *as modified on denial of reh'g* (Oct. 28, 1998) (adult plaintiff alleging childhood sexual molestation by parish priest had not "allege[d] lack of knowledge or appreciation of Father Llanos's misconduct[, which]

---

[3] *WA Southwest* "d[id] not involve the parties from whom plaintiffs actually purchased their investments," but instead concerned "defendants . . . on the periphery of the transaction." *Id.*

9

deprive[d] him of any basis upon which to disclaim inquiry notice that the church was a potential tortfeasor."); *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal. App. 2d 690, 725 (Ct. App. 1968) ("There is authority . . . for the proposition that where the victim is unaware of the negligence of an agent or one acting in a fiduciary relationship, the commencement of the running of the statutory period is suspended until either the relationship is terminated or there is discovery or grounds for discovery of the negligent breach of duty.")).

Accordingly, the court declines to resolve Berthel's motion as a motion for summary judgment and instead turns to the merits of its Rule 12 arguments. *See* Mot. at 2 (leaving to court to determine whether motion should be resolved under Rule 56 or Rule 12).

  B. Motion to Dismiss

    1. Fraud in the Inducement

Fraud in the inducement is a subset of fraud that arises when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which by reason of the fraud, is voidable." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005) (internal quotation marks and citations omitted). "The elements of fraud . . . are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." 5 Witkin, Summary 11th Torts § 890 (2019).

Berthel complains that plaintiffs have "not specif[ied] what they contend Davis actually said, let alone where or how he said it. . . . [or] why Davis's statements (whatever they may be) fell short of a 'proper' disclosure or what additional information . . . should have been given to them." Mot. at 19. Plaintiffs' allegations are not as threadbare as Berthel suggests. Plaintiffs set forth the alleged content of Davis's purported misrepresentations. *See* FAC ¶¶ 13−14 (Davis represented investments "were a secure way to invest [plaintiffs] retirement money" and "would provide the Langilles with a full return of their principal investment along with income"). They also allege the content of Davis's purported omissions. *Id.* ¶¶ 15−20 (Davis did not disclose "serious risks" associated with the investments," the "extremely large commissions" Davis and Berthel would recover from plaintiffs' investments, the "extremely unsuitable [nature of the

investments] . . . based on the Langilles' ages, the [sic] employment status, directives as well as their investment objectives and risk tolerance level" and the "extreme risk" they faced investing "a very significant portion of [their] [] entire liquid net worth" in these funds). Nonetheless, the court agrees more robust allegations, particularly as to the "when, where, and how" of Davis's alleged fraud are necessary to satisfy Rule 9(b). *See Vess*, 317 F.3d at 1106. Plaintiffs' complaint is silent on these points.

Accordingly, the motion is GRANTED with leave to amend.

2. <u>Statute of Limitations & Discovery Rule</u>

A four-year statute of limitations period governs plaintiffs' breach of fiduciary duty claim. Cal. Civ. Proc. Code § 343; Judicial Council of California Civil Jury Instruction 4120 & Directions for Use (applying section 343's four-year period but noting some courts have held section 338(d)'s three-year period applies "if the breach can be characterized as constructive fraud"). Plaintiffs' fraud in the inducement claim is subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d). A two-year statute of limitations period controls for both plaintiff's negligence and negligent supervision claims. Cal. Civ. Proc. Code § 335.1.

"The uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897 (1985)) (emphasis in original). "In order to rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (original alteration; citation omitted). The limitations period begins once the plaintiff "has notice or information of circumstances to put a reasonable person on inquiry . . . ." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110–11 (1988) (internal quotations, citations, emphasis omitted). When plaintiffs become aware of an injury, they "are required to conduct a reasonable investigation . . . and are charged
/////

with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808 (emphasis, citations omitted).

It is clear from the operative complaint that plaintiffs' claims arise from investments they made on Davis's advice in November 2006. *See* FAC ¶ 10. Plaintiffs filed this suit on February 15, 2019, ECF No. 1-1, more than twelve years after plaintiffs made their investment. Accordingly, it is apparent from the face of the operative complaint that plaintiffs' claims are time-barred unless saved by tolling.

Plaintiffs rely on the delayed discovery rule, arguing their claims are timely because, regardless of whether the prospectuses and other documents alerted plaintiffs to the high-risk and illiquid nature of the investments, plaintiffs only "had [] reason to believe" the investments were ill-suited for their needs and inconsistent with Davis's representations and indeed could only have discovered their claim in late 2016 when they learned their UDF investment was "worthless," rather than the safe and profitable investment Davis had held it out to be. *Id.* at 8−12. For support, plaintiffs rely on cases holding that a party's duty to investigate is relaxed or absent when she relies on the representations of a fiduciary acting on her behalf. *Id.* at 9−11; *Hobbs v. Bateman Eichler, Hill Richards*, 164 Cal. App. 3d 174, 201−03 (1985) (plaintiff had no duty to investigate where financial advisor changed her investment goals form without her permission, made trades and purchases without her consent or authorization and sent plaintiff confirmation slips that did not identify her account balance or indicate her distribution checks were paid from principal); *see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436–37 (9th Cir. 1984) ("[T]he statute of limitations may be tolled by a broker reassuring his client on concerns relevant to the possible misrepresentation.") (citing *Twomey*, 262 Cal. App. 2d at 723–29 (1968)); *but see WA Sw. 2, LLC*, 240 Cal. App. 4th at 156–58; *Calvi v. Prudential Sec., Inc.*, 861 F. Supp. 69, 72 (C.D. Cal. 1994) (distinguishing *Hobbs* where "there were no written offering memoranda—or any other documentation—which specifically contradicted the broker's oral assurances. . . . *Hobbs* concerned a broker's unauthorized trading without the plaintiff's knowledge. No such claim of blatant wrongdoing has been made in this action.") (footnote omitted).

/////

Plaintiffs have alleged their discovery, upon finding their investments were worthless, and their inability to earlier discover their claims given their reliance on their fiduciary's representations. As discussed above, whether plaintiffs' argument ultimately will prevail cannot be determined on this record. Because plaintiffs now also allege their discovery was impeded because they never received certain disclosures and dispute the accuracy of certain investor information required by Berthel, allegations not included in plaintiffs' complaint, the motion is GRANTED with leave to amend to allow plaintiffs to provide such allegations.

IV. CONCLUSION

The motion to dismiss is GRANTED. Plaintiffs may file an amended complaint within twenty-one (21) days.

IT IS SO ORDERED.

DATED: September 18, 2019.

_____
UNITED STATES DISTRICT JUDGE