UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBINSON L. LANGILLE and LINDA L. LANGILLE, | No. 2:19-cv-00454-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| BERTHEL, FISHER & COMPANY FINANCIAL SERVICES, INC., | |
| Defendant. | |

      Defendant Berthel, Fisher & Company Financial Services, Inc. moves to dismiss plaintiffs Robinson and Linda Langille's second amended complaint for fraud and negligence based on spoiled investments. Having carefully considered the briefing on the motions, arguments at hearing and the applicable law, the court DENIES defendant's motion.

I.    BACKGROUND

      The court previously set forth the detailed factual and procedural history of this matter in its September 19, 2019 order on defendant's motion to dismiss plaintiffs' first amended complaint. *See* Mot. to Dismiss ("MTD") Order, ECF No. 32, at 1–3. Accordingly, for the purpose of resolving the present motion, the court need only briefly explain the backdrop of this case.

In the fall of 2006, plaintiffs entrusted defendant and Shawn B. Davis, a registered financial advisor in defendant's employ, with a substantial sum of plaintiffs' liquid net worth to invest in low-risk, income-generating securities. Second. Am. Compl. ("SAC") ¶¶ 10–13, ECF No. 33. Plaintiffs granted Davis unfettered discretion to invest these funds as he deemed fit so long as they aligned with plaintiffs' conservative investment goals. *Id.* ¶ 20. On plaintiffs' behalf, Davis invested in two speculative private securities known as direct participation programs ("DPPs"). *Id.* ¶ 4. Specifically, in November 2006 Davis invested $278,000 in a DPP known as United Development Funding III ("UDF") and $275,000 in a separate DPP known as Atel Growth Capital Fund ("Atel"). *Id.* ¶¶ 15–16. In so doing, plaintiffs allege Davis engaged in a series of fraudulent and negligent acts in breach of his fiduciary duty. *Id.* ¶¶ 17–31. Plaintiffs allege they "completely relied upon Mr. Davis and Defendant to invest their savings in an appropriate manner" and "had no idea that anything was wrong, or that they had been damaged in any way, or that Mr. Davis had made misrepresentations, omissions and engaged in [] other wrongful conduct" until late 2016, when they became aware the UDF investment was worthless. *Id.* ¶¶ 32, 34, 37. Similarly, in June 2008, Atel advised its shareholders final distributions were being made and informed plaintiffs they would receive nothing beyond their initial investment. *Id.* ¶ 38.

Plaintiffs allege "Defendant failed in its legal duties . . . to protect [plaintiffs'] assets from the unsuitable and self-serving conduct of its broker . . . [and] likely turned a blind eye or otherwise advocated the selling of these types of private products" because it generated substantial fees for defendant. *Id.* ¶ 48. Because of Davis's "self-dealing, reckless conduct, and Defendant's failure to supervise, [plaintiffs] have incurred serious damages." *Id.* ¶ 49.

On February 15, 2019, plaintiffs initiated suit in Sutter County Superior Court. ECF No. 1-1 (electronic file stamp dated "2/15/2019"). On March 11, 2019, defendant timely removed to this court. ECF No. 1. On April 8, 2019, plaintiffs amended their complaint, ECF No. 15, and on April 22, 2019, defendant moved to dismiss, ECF No. 16. On September 19, 2019, the court granted defendant's motion to dismiss, determining (1) the record was insufficient to convert defendant's motion to one for summary judgment, (2) plaintiffs failed to meet the

particularity standards of Rule 9(b) in pleading their fraud-based claims, and (3) plaintiffs' ability to bring additional allegations and/or factual support regarding application of the discovery rule warranted granting the motion with leave to amend.  MTD Order at 6–13.

On October 9, 2019, plaintiffs filed the operative second amended complaint. SAC.  On October 18, 2019, defendant once again moved to dismiss.  Mot., ECF No. 34. Plaintiffs timely opposed.  Opp'n, ECF No. 39.  Defendant timely replied.  Reply, ECF No. 46. On March 6, 2020, the court heard oral argument on the motion.  Counsel Frank Sommers appeared on behalf of plaintiffs; counsel Cory Olson appeared for defendant.  After hearing argument, the court took the matter under submission for resolution by written order.  As discussed below, defendant asks the court to convert its motion to one for summary judgment and, based on the state of the record, the court grants the request.

II.   LEGAL STANDARDS

A.   Rule 9(b): Fraud Allegations

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the fraud.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted). Ultimately, a plaintiff's fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

B.   Rule 12(b)(6) Motion to Dismiss and Rule 56 Motion for Summary Judgment

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

3

1990). If, however, the parties to a Rule 12(b)(6) motion present matters outside the pleadings,[1] the court must treat the motion as one for summary judgment under Rule 56, provided all parties are given reasonable opportunity to present evidence pertinent to the motion. Fed. R. Civ. P. 12(d).

If a Rule 12(b)(6) motion is converted into one for summary judgment, Rule 56 standards then apply. A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

---

[1] There are two instances in which the court may consider matters outside the pleadings without converting a 12(b)(6) motion into one for summary judgment: judicial notice under Federal Rule of Evidence 201 and the incorporation by reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). Neither exception applies here.

587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The court is guided by the Supreme Court's admonition that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This is true "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III. DISCUSSION

Given the current state of the record, the substantial evidence filed in support of and in opposition to defendant's motion and the parties' representations at hearing, the court finds that defendant's 12(b)(6) motion to dismiss must be converted to a motion for summary judgment. Before reaching the summary judgment question, however, the court must first address defendant's alternative theory that, extrinsic evidence notwithstanding, the complaint itself fails to satisfy Rule 9(b)'s particularity standards.

A. Pleading Sufficiency Under Rule 9(b)

Defendant contends the second amended complaint still fails to satisfy Rule 9(b)'s particularity standards because plaintiffs "simply repeat allegations the Court has already determined are insufficient . . . [and] dismissal is appropriate because the alleged 'misrepresentations' are not actionable statements." Mot. at 16 ("To be fraudulent or misleading, the statement must be capable of objective verification." (citing *Wholesale & Dep't. Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017)). Defendant further argues that to the extent the complaint contains any detail at all, the statements pled constitute predictions or opinions about the securities' future performance, which cannot be objectively verified, and thus cannot clear the Rule 9(b) hurdle. *Id.* Defendant asserts the second amended complaint "does nothing to clear the vagaries of the prior, insufficient allegations." *Id.* at 17.

In opposition, plaintiffs argue the second amended complaint specifically identifies incidents in which Davis and Berthel, "engaged in . . . improper, self-serving conduct to induce the Langilles to purchase [] two DPPs for the purpose of generating massive commissions at the Langilles' expense." Opp'n at 13. The opposition highlights the allegations plaintiffs argue are sufficiently specific, and notes which allegations meet the "who, what, where, when and how" requirements of Rule 9(b). *Id.* at 14.

The court finds the fraud-based allegations in the second amended complaint satisfy Rule 9(b). While Rule 9(b)'s requirements are more demanding than Rule 8's plausibility

standards, those requirements do not eviscerate the liberal pleading philosophy animating the federal rules. For this reason, Rule 9 must not be read in isolation:

> Rule 8 supplies both allowances and constraints that must inform a proper understanding of what Rule 9(b) requires; one cannot focus exclusively on the fact that Rule 9(b) requires particularity in pleading the circumstances of fraud without taking account of the general simplicity and flexibility contemplated by the federal rules, as well as the strictures of plausibility pleading.

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (4th ed. 2019). Moreover, Rule 9 is not so rigid as to prohibit consideration of the parties' relationship and the nature of the alleged fraud. Indeed, these factors often inform the level of scrutiny the court must apply to the allegations. *See BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties." (citing *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957)); *Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ("When a claim rests on allegations of fraudulent omission, however, the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." (citation and internal quotation marks omitted)). When in doubt, the court must ultimately be guided by the question of "how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading[?]" Wright & Miller, § 1298 (4th ed. 2019).

The second amended complaint provides defendant sufficient detail to respond to the allegations. First, as a practical matter, the substantial evidence defendant provides in support of its motion undermines defendants' Rule 9 argument and telegraphs that defendant has sufficient information to respond to plaintiffs' allegations. *See* Supp. Olson Decl., ECF No. 35 (exhibits A–R). Second, extrinsic evidence aside, the allegations themselves provide the necessary detail. The complaint alleges that Davis: had plaintiffs sign acknowledgements of receipt for prospectuses they never received, SAC ¶ 19, misrepresented plaintiffs' financial eligibility on certain DPP application forms, *id.* ¶ 20, misrepresented plaintiffs' financial experience and investment experience on new account forms in order to feign their eligibility, *id.*

7

1  ¶ 23, had plaintiffs sign blank forms and then backfill inaccurate information on plaintiffs' behalf
2  or he would sign or initial documents without permission, *id.* ¶ 24, misrepresented that DPPs
3  were safe investments that would provide full return on principal, *id.* ¶¶ 26–27, and failed to
4  properly disclose the risk characteristics of the securities, the danger of not having a diversified
5  account and the large commissions associated with those transactions, *id.* ¶¶ 29–31.  The
6  complaint also alleges that despite Davis's understanding of plaintiffs' limited investment
7  experience and financial limitations, he nonetheless "recommended that the[y] [] concentrate their
8  brokerage account in two speculative, high-risk and illiquid DPPs."  *Id.* ¶¶ 11–14.  Finally,
9  plaintiffs allege "these events occurred either at [their] home or at Mr. Davis' office" in 2006, at
10 or around the time the investment account was opened.  *Id.* ¶¶ 10, 16, 23, 25.  These allegations
11 provide sufficient detail to identify the parties, timing, documents, securities, misrepresentations
12 and omissions related to the alleged fraudulent activity.  In considering the nature of the claims
13 and the parties' relationship, plaintiffs allege Davis, and by proxy defendant, acted in a fiduciary
14 role and had a duty to make certain security-related disclosures, yet failed to do so.  *Id.* ¶¶ 28–29,
15 59; *see BJC Health System*, 478 F.3d at 917; *Asghari*, 42 F. Supp. 3d at 1325.
16         These allegations satisfy Rule 9(b)'s demands as applied to this case.
17         B.     <u>Defendant's Motion for Summary Judgment: Statute of Limitations</u>
18         The court turns next to defendant's motion, construed as one for summary
19 judgment, attacking the timeliness of plaintiffs' complaint.  Defendant believes plaintiffs' claims
20 are barred as untimely for three reasons: (1) the complaint fails to allege facts triggering the
21 discovery exception to the applicable statutes of limitation; (2) undisputed evidence confirms
22 plaintiffs were on notice of their claims no later than 2011; and (3) as a matter of law the tolling
23 period ended in 2012 when Davis ceased employment with defendant Berthel Fisher.  Mot. at 6–
24 15.  Plaintiffs argue the limitations period does not begin until all elements of a cause of action
25 accrue; thus, because plaintiffs did not sustain damages until at least December 31, 2016, the
26 point at which they realized the UDF security was worthless, the limitations period did not start
27 until that date.  Opp'n at 4–5.  Plaintiffs also contend application of the discovery rule raises a
28 question of fact, and turns on resolution of the point at which they knew or should have known a

cause of action had arisen. *Id.* at 6. Finally, plaintiffs argue Davis's severance of a professional relationship does not supersede applicability of the discovery rule nor the need for a cause of action to accrue before the statute of limitations period begins running. *Id.* at 7–10. As discussed below, defendant's motion for summary judgment on this question must be denied because there are disputes of fact that cannot be resolved without trial.

As the court's prior order explained, two-to-four-year limitations periods govern plaintiffs' claims. Cal. Civ. Proc. Code § 343 (four years for breach of fiduciary duty); Cal. Civ. Proc. Code § 338(d) (three years for fraud in inducement); Cal. Civ. Proc. Code § 335.1 (two years for negligence and negligent supervision). Plaintiffs must establish damages for each cause of action to ultimately prevail. *See IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646 (2018) (breach of fiduciary duty); *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005) (listing elements of fraud and describing "fraud in the inducement [a]s a subset of the tort of fraud"); *Johnson v. Prasad*, 224 Cal. App. 4th 74, 78 (2014) (negligence); *Greenfield v. Am. W. Airlines, Inc.*, No. C 03-5183 MHP, 2005 WL 756602, at *21 (N.D. Cal. Mar. 31, 2005) (negligent supervision (citing *Love v. Motion Indus.*, 309 F. Supp. 2d 1128, 1138 (N.D. Cal. 2004)).

"When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (2000). "Therefore, when the wrongful act does not result in immediate damage, 'the cause of action does not accrue prior to the maturation of perceptible harm.'" *Id.* (quoting *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970)). "The resulting damage must be 'actual monetary loss.'" *Id.* at 887 (quoting *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995)). Once a cause of action accrues, the applicable statute of limitations begins to run. *Id.* at 886. However, the start of the limitations period may be delayed to the point "plaintiff learns, or should have learned, [of] the *facts* essential to his claim." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (emphasis in original) (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897 (1985)). When plaintiffs become aware of an injury, they "are required to conduct a reasonable investigation . . . and are charged with knowledge of the

1  information that would have been revealed by such an investigation." *Id.* at 808 (emphasis and
2  citations omitted).

3  Because the court considers defendant's motion as one for summary judgment, and
4  evaluates evidence beyond the complaint, it need only consider defendant's contention that
5  plaintiffs fail to allege facts triggering the discovery rule, to the extent the undisputed facts
6  support or undermine the allegations in the complaint relevant to the discovery issue. Mot. at 6–
7  9. In other words, the court will evaluate the allegations in conjunction with supporting evidence
8  as Rule 56 instructs and not limit its findings to the complaint alone.

9        1.      Questions of Disputed Fact

10  Summary judgment must be denied because the undisputed facts of record
11  demonstrate that disputes remain regarding when the relevant limitation periods began.

12  Plaintiffs argue "there was no 'loss in value' on the two investments . . . until
13  December 31, 2016 [at the earliest] because prior to that date the two investments were
14  represented by quarterly account statements as being *fully valued*." Opp'n at 5 (emphasis in
15  original). Therefore, because the reports they received showed their investments suffered no loss
16  in value, nor were they aware of any loss, until December 31, 2016, their causes of action did not
17  accrue, and the limitations period did not begin, until that date. *Id.* Defendant contends
18  plaintiffs' damages are entirely separate from the investments' value because damages are
19  measured by how an "investment's characteristics" align with the "investor's needs and
20  objectives," not by the investments' price fluctuation. Reply at 4.

21  On this point, plaintiffs have the better argument. In *City of Vista v. Robert*
22  *Thomas Securities, Inc.*, the state appellate court addressed the very issue raised here. 84 Cal.
23  App. 4th 882 (2000). In 1990, the City of Vista, a California municipal corporation, purchased
24  two securities known as interest-only strips, which entitled holders to a proportional share of
25  interest generated from a pool of bonds. *Id.* at 884. Shortly after purchase, Vista sought to
26  rescind the security purchases as antithetical to its investment policies and because defendant's
27  broker allegedly "misrepresent[ed] [] the nature of the securities." *Id.* at 885. Vista filed a
28  complaint in November 1995, asserting fraud, breach of fiduciary duty and negligence claims

1   among others. *Id.* at 885–86.  The trial court entered summary judgment in defendant's favor,
2   finding Vista's claims time-barred because it had discovered the investments' unsuitability no
3   later than September 6, 1990, and knew it had suffered pecuniary damage by October 18, 1991.
4   *Id.* at 886.

5      The appellate court reversed, finding a triable issue of fact as to when Vista
6   suffered monetary loss. *Id.* at 887.  In so doing, the court rejected arguments similar to
7   defendant's arguments here.  First, the defendant in *City of Vista* argued that it "'strains credulity'
8   that the SBA strips had not dropped in value prior to 1994 because the other two SBA strips were
9   sold at a loss and because the SBA strips were not guaranteed by the federal government." *Id.* at
10  887–88 (footnote omitted).  The court rejected this argument because the defendant "presented no
11  evidence as to the value of the SBA strips at any point in time." *Id.* at 888.

12     Second, the defendant argued that "Vista suffered damage the instant it purchased
13  the [] strips because [it] could not legally own those securities under Government Code section
14  53601" and the securities negatively affected the conservative nature of Vista's investment
15  portfolio. *Id.* at 887.  The court again rejected this argument because expert testimony revealed
16  that due to the nature of these securities, it was "generally impossible to know the ultimate
17  outcome of the . . . strip package investment until near the last interest payment received," which
18  was not ascertainable for at least one investment until 1994. *Id.*  That Vista expressed suspicion
19  about defendant's alleged unscrupulous behavior in a 1991 letter was not dispositive because
20  there were questions of fact regarding whether Vista expected interest payments from those
21  securities to offset any potential loss during the period up to 1991. *Id.*  Thus, questions of fact
22  remained as to when Vista incurred monetary loss and when it was aware of that loss. *Id.* at 887–
23  88.

24     In this case, there are questions of fact regarding when plaintiffs incurred
25  pecuniary damage and when they became aware of the damage.  The undisputed evidence shows
26  plaintiffs relied exclusively on Davis's recommendations and advice regarding the UDF and Atel
27  investments.  Robinson Langille ("R. Langille") Decl. ¶ 6, ECF No. 42; Linda Langille ("L.
28  Langille") Decl. ¶ 6, ECF No. 43.  Although plaintiffs, at the very least, received and initialed or

11

signed Berthel Fisher's form entitled "Prospectus/Private Placement/Memorandum Acknowledgement/Representations"[2] warning of the risks associated with UDF and Atel investments, *see* Undisputed Material Fact ("UMF") 25, 36, ECF No. 40, plaintiffs aver they only initialed where Davis told them to, without explaining why.  UMF 36.  They also say they were unaware of any diminution in value until receiving UDF's June 30, 2016 quarterly statement indicating the stock was worthless.  UMF 66; R. Langille Decl. ¶ 21; L. Langille Decl. ¶ 21.  It is true, as defendant notes, plaintiffs are not excused merely by their claim they did not read or understand the contents of the acknowledgement form, *see* UMF 36; *Employee Painters' Tr. v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996) ("A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it."), nor is it irrelevant that plaintiffs purchased $300,000 worth of non-traded REIT securities through Davis in 2005, which might tend to suggest plaintiffs had some familiarity with purchasing non-traded securities and the risks associated therewith, *see* UMF 56 unless they were just easy marks.  Nonetheless, awareness of the risk imputed to them by initialing or signing the acknowledgement form or through prior investment activity are factors that inform the factual question of when they were, or should have been, aware of the investments' loss in value.

    Plaintiffs also aver that from 2006 through 2016 they received periodic UDF dividend disbursements and quarterly statements consistently listing plaintiffs' account at full value based on their UDF stock holdings at $20.00 per share.  UMF 64; R. Langille Decl. ¶¶ 20–24; L. Langille Decl. ¶¶ 20–24.  Similarly, from 2006 through 2018, Atel's quarterly statements listed the stock as fully valued.  UMF 69; R. Langille Decl. ¶¶ 20–22, 26; L. Langille Decl. ¶¶ 20–22, 26.  Plaintiffs testify they had "no reason to question the quarterly statements . . . which consistently represented that our investments in UDF and Atel were fully valued in the amounts we had invested into them."  R. Langille Decl. ¶ 27; L. Langille Decl. ¶ 27.  Viewing the

---

[2] A dispute of fact arises not because plaintiffs claim they never received these specific acknowledgement forms, but rather that they never received the prospectuses described in the acknowledgement forms.  UMF 25, 36.

evidence in plaintiffs' favor as the court must, *Matsushita*, 475 U.S. at 587–88, the record suggests either the UDF and Atel securities did not depreciate in value until 2016 at the earliest, and thus plaintiffs did not incur pecuniary damages until then, or plaintiffs were unaware of the diminution in value until 2016.

As in *City of Vista*, defendant presents no contrary evidence showing the UDF and Atel securities diminished in value prior to plaintiffs' receipt of the 2016 respective quarterly statements showing the decline. Nor does defendant present evidence showing plaintiffs were or should have been aware of alternative information sources allowing plaintiffs to monitor UDF's and Atel's share prices. Defendant does provide support for the notion plaintiffs were, or should have been, on notice that the securities were antithetical to their investment preferences. *See* UMF 25, 36 (undisputed evidence plaintiffs were in receipt of prospectus acknowledgement forms containing the disclaimer "I understand and recognize there are substantial risks related to the purchase of this Security."). This undisputed evidence, however, does not explain when plaintiffs incurred damages and thus when their claims accrued.

In its reply brief, defendant cites several cases for the proposition that "[i]n a suitability claim, the 'damage' is the investor's receipt of an allegedly unsuitable investment." Reply at 4. These cases are inapposite because they primarily consider the question of investment suitability under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). *See, e.g.*, *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1032 (4th Cir. 1997) (listing elements of § 10(b) unsuitability claim and treating as "subset" of ordinary § 10(b) fraud claim); *Lefkowitz v. Smith Barney, Harris Upham & Co.*, 804 F.2d 154, 155 (1st Cir. 1986) (analyzing unsuitability allegations under § 10(b) and Rule 10b–5, 17 C.F.R. § 240.10(b)–5); *Keenan v. D.H. Blair & Co.*, 838 F. Supp. 82, 85 (S.D.N.Y. 1993) (same). Although these cases do contain overlapping discussions of common law fraud and unsuitability under § 10(b), given the fraudulent behavior undergirding both causes of action, they do not stand for the proposition that common law fraud or tort claims in California are treated identically to § 10(b) claims for purposes of damage accrual. Rather, the law in California appears clear: "where monetary damages is an element of the offense, accrual of the action does not occur until pecuniary loss is

suffered." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing *City of Vista*, 84 Cal. App. 4th at 887); *see also City of Vista*, 84 Cal. App. 4th at 889 ("When a party learns that he has been defrauded, he may, instead of rescinding, elect to stand on the contract and sue for damages . . . .").[3] Here, defendant provides no evidence showing the UDF and Atel investments were reported as anything but fully-valued until plaintiffs received the final statements in 2016.

Finally, because the date for accrual of damages remains an open question, tolling the statute of limitations based on discovery of those damages remains open as well. *Fox*, 35 Cal. 4th at 807. Once the trier of fact determines damages were realized on a certain date and when plaintiffs were aware, or should have become aware, of the facts vital to state their claims, then and only then the court can resolve the statute of limitations questions defendants' motion raises, and whether any of plaintiffs' claims are barred by the two-to-four-year limitation periods applicable here. *See Bookout v. State of California ex rel. Dep't of Transportation*, 186 Cal. App. 4th 1478, 1484 (2010) ("The determination of when the statute of limitations begins to run is a question of fact."), *as modified* (July 28, 2010).

### 2. Severance of the Fiduciary Relationship

Defendant also contends that to the extent plaintiffs' entering into a fiduciary relationship with Davis lessened their duty to investigate facts essential to their claims, that diminished duty evaporated in 2012 when Davis left Berthel Fisher. Mot. at 12–15. Defendant

---

[3] Although they are not authoritative, unpublished California cases further support the notion that due to the speculative nature of securities, damages will not materialize until it is clear pecuniary loss is sustained. *See Mayhew Plaza Woodland Hills II, LLC v. Kelsey*, No. G055668, 2019 WL 2295784, *9 (Cal. Ct. App. May 30, 2019) (unpublished) (discussing *City of Vista* and explaining, "Investments are speculative because no one can reasonably predict how they will turn out. . . . Not until the returns were in and it was clear that Vista had lost money could the fraud have harmed Vista."); *see also Kelter v. Yelland*, No. G043159, 2011 WL 2565328, at *5 (Cal. Ct. App. June 29, 2011) (unpublished) (discussing *City of Vista* and noting the securities there "created only the potential for future harm, which would occur if the interest payments [Vista] received over the securities' term failed to cover the city's initial investment and provide a reasonable return. Because the interest payments on the securities fluctuated over time, the city could not determine whether it would lose money and suffer appreciable harm until it approached the final interest payment").

14

argues that because there is evidence showing plaintiffs were, or should have been, on notice of the facts underlying their claims when the fiduciary relationship ended, plaintiffs failed to meet their duty to investigate such facts, *see Rawlings v. Harris*, 265 Cal. App. 2d 452, 457–58 (1968), thus causing the limitations period to begin running.

Defendant's argument regarding severance of Davis's fiduciary role focuses on plaintiffs' duty to discover facts essential to their claim, not when their damages accrued. As reviewed above, the current record does not eliminate the factual dispute regarding when damages materialized. Not until the damages accrual question is determined does the question of plaintiffs' discovery arise. Plaintiffs do not argue that severance of a fiduciary relationship does not alter plaintiffs' duty of discovery; they do, however, argue their duty does not alter the requirement for a cause of action to fully accrue before the limitation period begins to run. *See* Opp'n at 10 ("The case does not, therefore, stand for the proposition that the termination of a client's professional relationship always starts the limitations period regardless of when damages were incurred and regardless of actual or constructive discovery."). For these reasons, any severance of the fiduciary relationship in 2012 does not change the court's conclusion above that triable questions of material fact preclude summary judgment.

IV.    CONCLUSION

For the reasons set forth above, triable questions of material fact remain as to when plaintiffs' causes of action accrued and the limitations period begun. Accordingly, defendant's motion to dismiss, ECF No. 34, construed as a motion for summary judgment, is DENIED.

DATED: July 10, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

15